UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,　　　　　) | |
| 　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　Plaintiff,　　　　　　) | |
| 　　　　　　　　　　　　　　　　　) | |
| 　　　　v.　　　　　　　　　　　　) | Civil Action No. _____ |
| 　　　　　　　　　　　　　　　　　) | |
| $47,000 IN U.S. FUNDS ASSOCIATED　) | |
| WITH JP MORGAN CHASE ACCOUNT　) | |
| NOS. XXXXXX3282, XXXXX0170　　　) | |
| 　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　) | |
| 　　　　　　　Defendant.　　　　　　) | |

**VERIFIED COMPLAINT
FOR FORFEITURE *IN REM***

COMES NOW, Plaintiff the United States of America, by and through the United States

Attorney for the District of Columbia and brings this Verified Complaint for Forfeiture *in Rem*

against the defendant funds, namely: $47,000.00 in U.S. funds associated with the JP Morgan

Chase account numbers 3379963282 and 786250170 held jointly in the name of two persons

("Money Mover 1"and "Money Mover 2") (the "Defendant Funds"), and alleges as follows in

accordance with Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture

Actions ("Supplemental Rule") G(2):

**THE DEFENDANT FUNDS**

1.　　　The Defendant Funds are $47,000 seized on or about December 17, 2015 from JP

Morgan Chase account numbers 3379963282 and 786250170 held jointly in the names of Money

Mover 1 and Money Mover 2.  The funds were deposited into the Treasury Suspense Account of

the Treasury Forfeiture Fund ("TFF").  The TFF is managed and administered by the U.S.

Department of Treasury, Executive Office for Asset Forfeiture ("TEOAF"), which is located in

the District of Columbia.

## NATURE OF ACTION AND THE DEFENDANT IN REM

2.      This action arises out of an investigation by the U.S. Capitol Police and Internal Revenue Service ("IRS") of a fraudulent scheme, to launder funds totaling $65,000 from victim bank accounts located in the District of Columbia to bank accounts in Ekhart, Indiana and McKinney, Texas

3.      The fraudulent scheme, which used sophisticated electronic tools to induce the transfer and subsequent laundering of the Defendant Funds, in violation of 18 U.S.C. § 1343, and the federal money laundering statutes, codified at 18 U.S.C. §§ 1956 and 1957.

4.      The Defendant Funds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) as property constituting or derived from proceeds of wire fraud.  In addition, the Defendant Funds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in, and traceable to money laundering violations, in violation of 18 U.S.C. §§ 1956 or 1957.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1345 and 1355.

6.      Venue is proper pursuant to 28 U.S.C. §§ 1355(b)(1)(A) and 1391(b)(2) because acts or omissions giving rise to the forfeiture occurred within the District of Columbia.  The Defendant Funds are currently held in the Treasury Suspense Account located in the District of Columbia.  The Defendant Funds were wired from the victim's Washington, D.C. bank accounts.

## STATUTORY BASIS FOR FORFEITURE

7.      Based on the facts set forth in this Complaint, there is a reasonable belief that the defendant funds are subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), as any property, real or personal, which constitutes or is derived from proceeds traceable to an offense constituting a specified unlawful activity. Section 1956(c)(7)A) defines specified unlawful activity to include

any act or activity constituting an offense listed in 18 U.S.C. § 1961(1).  Wire Fraud, in violation of 18 U.S.C. § 1343, is an offense listed in section 1961(1).

8.     Based on the facts set forth in this Complaint, there is also a reasonable belief that the defendant property is subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(A), as any property, real or personal, involved in a transaction in violation of 18 U.S.C. §§ 1956 or 1957, or any property traceable to such property.

## FACTS GIVING RISE TO FORFEITURE

### I.     Investigation Background

9.     The U.S. Capitol Police and the Internal Revenue Service ("IRS") are investigating a fraudulent scheme involving "email spoofing," that is, modifying the information on an email header so that the email appears to have originated from one source or sender when actually it originated from a different source. Based on information and belief, one or more suspects sent a series of spoofed emails which falsely purported to come from a Coldwell Banker Real Estate LLC ("Coldwell") email address.  These spoofed emails directed victim homebuyers (the "Victims") to execute two separate wire transfer totaling $65,000 from their bank account located in the District of Columbia to bank accounts located in Ekhart, Indiana and McKinney, Texas, as part of the home buying process.

10.     The Victims are married and reside in Virginia.  At the time of the fraud, they were in the process of purchasing a residence in Virginia.   Using their personal email addresses, the victims sent and received legitimate email communications with their Coldwell realtor (the "Realtor") to facilitate the real estate transaction.  The Realtor used the legitimate email address on the Coldwell domain—@cb**m**ove.com, which contains the letter "m" in the third position of the domain name.

## II.     The Legitimate Monetary Transfer: $16,000 Earnest Money Deposit

11.     In or about November 2015, the Victims wired out approximately $16,000, from the Victims' Bank Account as an earnest money deposit.  This transfer was legitimately part of the real estate purchase.

## III.    The First Illegitimate Monetary Transfer: $10,000

12.     Using "email spoofing," discussed *supra* ¶ 9, a fraudster can send an email that appears to have come from any email account that person specifies, without having access to or control over that account—sometimes called the "spoofed" account in this context.  Spoofed emails often have a "Reply-To:" field which specifies an email account different from the one being spoofed.  This way, all replies will be directed away from the spoofed account and toward an email account under the fraudster's control.  This "Reply-To:" email account often has a name that is easily confused with the spoofed account in order to avoid detection by the victim(s) of the scheme.

13.     On November 27, 2015, the victims received a spoofed email purportedly from Coldwell, instructing them to send $10,000 to a bank account located in Ekhart, Indiana.

14.     As part of the illicit scheme, the persons sending the fraudulent emails created the domain cbrnove.com, which is spelled c b **r n** o v e . c o m.  When used in common typescript, the letters "r" and "n" placed next to each other (rn) appear to be the letter "m."  Thus, although it appeared that the emails the victims received were from the cb**m**ove.com domain, they were in fact from the fraudulent cb**rn**ove.com domain.

15.     Complying with the instructions in the spoofed November 27, 2015 email, the Victims wired $10,000 from their Washington, D.C. bank account to the 1st Source Bank, located

in Ekart, Indiana. These funds were not part of the legitimate real estate transaction, and were not applied to the purchase of the Victims' home.

**IV.     The Second Illegitimate Monetary Transaction: $55,000**

16.     On December 1, 2015, the victims received another spoofed email, this time purportedly from the Realtor requesting that the victims send an additional $55,000 to Bank of America account number XXXXXXXXX0097 in the name of "Money Mover 2."  The victim replied back to the email which used the fraudulent domain -- @cb**rn**ove.com.

17.     On December 1, 2015, the victims received an email confirmation from their bank confirming the $55,000 wired transfer was sent to Bank of America account number XXXXXXXXX0097.

**V.      Wire Transfers of Proceeds**

18.     On December 2, 2015, the victims received a legitimate email from the Realtor using the legitimate domain (@cb**m**ove.com) stating "I am concerned that someone may have hacked [the victim's email account].  For every e-mail she sends me, I get between 35 and 50 copies of the exact same e-mail."

19.     On December 2, 2015 at 8:04 pm, the victims notified law enforcement that the aforementioned wires were fraudulent.

20.     On December 1, 2015, Money Mover 2 made two separate transactions into another account at Bank of America.  In the first transaction, Money Mover 2 transferred $50,000 of the fraudulently obtained funds into the Bank of America account and later transferred $5,000 of the fraudulently obtained funds into the Bank of America account.  On December 2, 2015, Money Mover 2 requested cashier's check number XXXXXX4938 in the amount of $47,000 be made payable to Money Mover 1.

21.    Money Mover 1 and Money Mover 2 were joint account holders at JP Morgan Chase & Co account numbers 3379963282 and 786250170.

22.    Money Mover 1 deposited cashier's check number XXXXXX4938 for $47,000 as follows: $7,000 into JP Morgan Chase & Co. account number 786250170 and $40,000 into JP Morgan Chase & Co. account number 3379963282.

23.    On December 17, 2015, there was $45,000 in JP Morgan Chase & Co. account number 3379963282, which funds were traced to the above-described deposit of fraudulent funds.

24.    On December 17, 2015, there was $2,000 in JP Morgan Chase & Co. account number 786250170, which funds were traced to the above-described deposit of fraudulent funds.

25.    On December 17, 2015, the government executed a judicially authorized seizure warrant to seize the Defendant Funds, totaling $47,000.

26.    Subsequent interviews of Money Mover 1 and Money Mover 2 revealed that they were directed by persons they met in online dating websites to send and receive the above-described fraudulent funds.  The persons who directed Money Mover 1 and Money Mover 2 operate fictitious identities from remote computing locations outside the United States.

27.    A co-conspirator believed to be the person who directed Money Mover 1 and Money Mover 2 from outside the United Stated was arrested in the United Kingdom on July 27, 2016. On July 11, 2017 this person pled guilty to conspiracy to commit fraud and money laundering and is scheduled to be sentenced in the United Kingdom in late 2017.

## COUNT ONE -- FORFEITURE
### (18 U.S.C. § 981(A)(1)(C))

28.    The United States incorporates by reference the allegations set forth in Paragraphs 1 to 27 above as if fully set forth herein.

29.     Money Mover 1, Money Mover 2, and others, known and unknown, acted individually and conspired together to conduct the above identified illegal financial transactions, in violation of 18 U.S.C. § 1343.

30.     As such, the Defendant Funds are subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), as property constituting or derived from proceeds of wire fraud and a conspiracy to commit wire fraud.

## COUNT TWO -- FORFEITURE
### (18 U.S.C. § 981(A)(1)(A))

31.     The United States incorporates by reference the allegations set forth in Paragraphs 1 to 27 above as if fully set forth herein.

32.     Money Mover 1, Money Mover 2, and others, known and unknown, acted individually and conspired together, to conduct and attempt to conduct the above-described financial transactions, knowing that the funds involved in those transactions, including the Defendant Funds, represented the proceeds of some form of unlawful activity, and with the intent to promote the carrying on of violations of 18 U.S.C. § 1343 (relating to wire fraud), in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

33.     Money Mover 1, Money Mover 2, and others, known and unknown, acted individually and conspired together, to conduct and attempt to conduct the above-described financial transactions, knowing that the funds involved in those transactions, including the Defendant Funds, represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of violations of 18 U.S.C. § 1343 (relating to wire fraud), in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

- 7 -

34.     As such, the Defendant Funds are subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in transactions in violation of 18 U.S.C. § 1956, or as any property traceable to such property.

## COUNT THREE -- FORFEITURE
### (18 U.S.C. § 981(A)(1)(A))

35.     The United States incorporates by reference the allegations set forth in Paragraphs 1 to 27 above as if fully set forth herein.

36.     Money Mover 1, Money Mover 2, and others, known and unknown, acted individually and conspired together to knowingly engage or attempt to engage in monetary transactions, to wit, the above-described financial transactions, which include the Defendant Funds, in criminally derived property of a value greater than $10,000, which were derived from violations of 18 U.S.C. § 1343 (relating to wire frauds), in violation of 18 U.S.C. §§ 1956(h) and 1957(a).

37.     As such, the Defendant Funds are subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in transactions in violation of 18 U.S.C. § 1957, or as property traceable to such property.

*     *     *

## PRAYER FOR RELIEF

WHEREFORE, the United States of America prays that notice issue on the Defendant Funds as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that a warrant of arrest *in rem* issue according to law; that judgment be entered declaring that the Defendant Funds be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.  Such relief will enable the government to return the Defendant Funds to the Victims.

Dated: October 27, 2017

Respectfully submitted,

Jessie K. Liu
United States Attorney

By: _____/s/_____
Marina C. Stevenson
DC Bar No. D00452
Special Assistant United States Attorney
Zia M. Faruqui, D.C.
Bar No. 494990
Assistant United States Attorneys
555 Fourth Street, NW
Washington, DC 20530
(202) 252-7117 (Faruqui)

*Attorneys for the United States of America*

## **VERIFICATION**

I, Jason Palumbo, a Special Agent with the Internal Revenue Service, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct.

Executed on this 27 day of October, 2017.


Jason Palumbo
Special Agent
Internal Revenue Service